UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| KEVIN LOMAX, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | No. 2:13-cv-01078 |
| : | |
| CITY OF PHILADELPHIA; MAYOR NUTTER; : | |
| PHILADELPHIA PRISON SYSTEM; : | |
| CFCF; CORIZON, INC.; DR. DAVID DAVIS; and : | |
| CFCF MENTAL HEALTH DEPT., : | |
| : | |
| Defendants. : | |

_____

## **O P I N I O N**

**Defendant Corizon, Inc.'s Motion for Summary Judgment, ECF No. 33: Granted
Plaintiff's Motion for Summary Judgment, ECF No. 40: Denied**

**Joseph F. Leeson, Jr.**                                                                                       **March 29, 2017**
**United States District Judge**

### I.     Introduction

Plaintiff Kevin Lomax, who was formerly detained at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, initiated this action pursuant to 42 U.S.C. § 1983. Defendant Corizon, Inc.,[1] moves for summary judgment on Lomax's claims and also moves for the dismissal of Defendant Dr. David Davis from this case. Lomax has filed a cross-motion for summary judgment. Because Corizon has shown that there is no dispute as to any material fact with respect to Lomax's claims against both Corizon and Dr. Davis, and that both Corizon and

---

[1]     "Corizon is a private corporation. It has a contract with the Philadelphia Prison System to provide healthcare for inmates." *Toro v. Nutter*, No. CIV.A. 13-7552, 2015 WL 4667670, at *3 (E.D. Pa. Aug. 6, 2015).

Dr. Davis are entitled to judgment as a matter of law, Corizon's motion is granted and Lomax's motion is denied.

In this Opinion, the Court also considers Lomax's claims against the remaining Defendants: the City of Philadelphia, Mayor Nutter, and the CFCF Mental Health Department. The Court dismisses Lomax's claims against these Defendants without prejudice and will permit Lomax to file an amended complaint with respect to his claims against these Defendants.

## II.     Background

### A.     Procedural History

Lomax filed his Complaint in March 2013, under § 1983, naming as Defendants the City of Philadelphia, Mayor Nutter, the Philadelphia Prison System ("PPS"), Curran Fromhold Correctional Facility ("CFCF"), Corizon, Inc., Dr. David Davis, and the CFCF Medical Health Department. Compl., ECF No. 5. Lomax's Complaint alleges that during his time at CFCF he was forced to sleep in a "boat,"[2] that he suffered neck, back, leg, and wrist pain, as well as headaches, as a result, and that these ailments were not properly treated by the prison's medical personnel.[3] He further alleges that "[o]ther inmates . . . have developed similar body pains, aches, injuries, etc." With his Complaint, Lomax also filed an application to proceed *in forma pauperis* ("IFP"). ECF No. 1. On March 28, 2013, the Court granted Lomax's IFP motion,

---

[2]   A "boat" is a plastic makeshift bed placed on the floor of the cell due to prison overcrowding.

[3]   In a "declaration" filed in July 2015, Lomax elaborated on these allegations, stating that he was in custody at CFCF from December 15, 2012, to May 14, 2013, and that he was:

> subject to some of the worst conditions ever from three (3) men sharing one (1) toilet to having three (3) men in a cell. Being forced to sleep in a makeshift bed called "Bunk/Boat" . . . in addi[]tion to urine and feces splashed on his bed that was place[d] on the cement floors. Being subject to rats and other things crawling on the floors of the Facility.

Lomax Decl., ECF No. 16.

placed his case in administrative suspense "pending disposition of the prison overcrowding civil actions filed prior to and on June 20, 2011," and ordered that no summonses were to issue at that time. ECF No. 4.

In September 2013, the Court took Lomax's case out of suspense, appointed legal counsel to Lomax, who previously had been proceeding *pro se*, and permitted counsel to file an amended complaint. ECF No. 6. Lomax's counsel did not file an amended complaint. In December 2014, a settlement conference was held. *See* ECF Nos. 9, 10, 12. Following the conference, Lomax's counsel filed a motion to withdraw, stating that he had negotiated and recommended to Lomax a settlement with Defendant City of Philadelphia and provided recommendations to Lomax regarding his claims against the medical providers, but Lomax declined to participate in the settlement or accept counsel's recommendations. ECF No. 13. The Court granted counsel's motion to withdraw, and Lomax again proceeded *pro se*. ECF No. 15.

In September 2015, Corizon filed an answer to Lomax's Complaint. ECF No. 20. Shortly thereafter, the Court dismissed Lomax's claims against Defendants Philadelphia Prison System ("PPS") and CFCF because these entities are not "persons" for purposes of § 1983, and the Court again permitted Lomax to file an amended complaint.[4] ECF Nos. 22-23. Lomax did not file an amended complaint. In March 2016, the Court granted Corizon's motion to take Lomax's deposition. *See* ECF Nos. 28, 30.

In July 2016, Corizon filed the present motion for summary judgment. ECF No. 33. In December 2016, this case was reassigned to the calendar of the Undersigned. ECF No. 36. In January 2017, Lomax filed his cross-motion for summary judgment, contending that "C.F.C.F., Corizon Inc., Dr. David Davis, and the Medical Staff erred by utilizing a Physician's Assistant . .

---

[4]   Lomax had filed a *pro se* motion to amend his complaint in December 2014. ECF No. 11.

3

. to remedy the plaintiff's ongoing medical issues that were directly caused by the unconstitutional treatment." Def.'s Mot. Summ. J. 3, ECF No. 40.

**B.     Factual Background**

Lomax testified that he was incarcerated at CFCF in Philadelphia for a period of five months, from December 13, 2012, to May 14, 2013. Lomax Dep. 11:8-11, ECF No. 33-3; Lomax Decl. 1, ECF No. 16. He further testified that during this time, due to prison overcrowding, he was placed in a three-man cell and was forced to sleep in a "boat." Lomax Dep. 16:7-16. According to Lomax, he was too big for the boat, so his ankles, wrist, or neck would hang over the sides. Lomax Dep. 16:11-14. This caused him to suffer neck, back, leg, and wrist pain, as well as headaches. Lomax Dep. 20:2-10. Specifically, Lomax testified that his neck pain would "come and go" during the day but would be "with [him] the whole night." Lomax Dep. 20:17-24. His headaches would occur when he first woke up in the morning and would gradually dissipate during the day. Lomax Dep. 22:20-23:5. His back pain and leg pain were present "all the time" while he was at CFCF. Lomax Dep. 21:3-14.

Lomax testified that although he no longer suffers from headaches and wrist pain, he has continued to suffer back and leg pain after leaving CFCF. Specifically, he stated that he still experiences back spasms when, for example, he puts on his shirt or jacket. Lomax Dep. 21:4-9. He also suffers from continuing sharp pain in his left knee, shin, and ankle; this pain affects him especially when walking a long distance or when coming down out of the top bunk of his cell.[5] Lomax Dep. 21:17-22:1. He does not, however, take any medication for his continuing back and leg pain. Lomax Dep. 43:17-19.

---

[5]     At the time of his deposition in March 2016, Lomax was incarcerated at SCI Benner. Lomax Dep. 13:20.

Lomax testified that he submitted approximately two sick call slips while at CFCF,[6] each of which concerned the pain that he was experiencing. Lomax Dep. 24:10-20. He testified that each time he was seen by a nurse who told him that he "was a big boy and [could] deal with the pain and to return to [his] housing unit." Lomax Dep. 15:13-18.

Lomax's medical records show that on February 7, 2013, in response to complaints of lower back pain from sleeping on the boat, he was seen by a physician's assistant who provided Lomax education about the pain and referred him to the commissary or sick call. Def.'s Mot. Summ. J. Ex. C, at 12, ECF No. 33-4; *see also* Lomax Dep. 34:9-35:4. He was seen by a nurse on March 6, 2013, for complaints of neck and back pain. Def.'s Mot. Summ. J. Ex. C, at 14; *see also* Lomax Dep. 35:25-36:14. During this encounter, Lomax's pain scale was reported as a six out of ten; he was instructed to return if his conditions worsened and was given or recommended a muscle rub. Def.'s Mot. Summ. J. Ex. C, at 14. On March 13, 2013, after submitting a grievance regarding his lower back pain, Lomax was again seen by the physician's assistant, who referred him to the commissary for Tylenol. *Id.* at 13; *see also* Lomax Dep. 35:5-24.[7]

### III. Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[6]    Lomax explained that inmates can obtain sick call slips from corrections officers; after submitting a slip, "[m]aybe three, four, sometimes five days later, they'll call you down to address your sick calls." Lomax Dep. 24:3-9.

[7]    The medical records also include documentation concerning Lomax's treatment following a tooth extraction in March 2013.

When the evidence favoring the nonmoving party is "merely colorable" or "not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). The parties must support their respective contentions—that a fact cannot be or is genuinely disputed—by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**IV.     Summary judgment is granted to Corizon and Dr. Davis.**

**A.     Corizon**

Lomax's claim against Corizon is for a violation of his Eighth Amendment right to receive adequate medical care pursuant to 42 U.S.C. § 1983. This statute permits a claim to be brought against every person who, under color of state law, deprives a plaintiff of a federally protected right. 42 U.S.C. § 1983. To establish an Eighth Amendment claim based on inadequate medical care, an inmate must prove that the defendants were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Lomax alleges that Corizon's nurses and other staff failed to appropriately treat his complaints of neck and back pain. Because Corizon is "[a] private company contracted by a prison to provide health care for inmates," it "cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." *See Henry v. Buskirk*, No. 08–1348, 2011 WL 767540, at *4 (E.D. Pa. Feb. 24, 2011); *see Matos v. Prison Health Serv. Inc.*, No. CIV.A. 14-4517, 2015 WL 2126928, at *3 (E.D. Pa. May 7, 2015) ("When an inmate brings a § 1983 claim against a private entity, the analysis is akin to a municipal liability claim

6

under *Monell*."). Lomax's complaint, "even liberally construed, fails to allege any policy or custom maintained by [Corizon] showing deliberate indifference to prisoners' serious medical needs," nor is there evidence in the record to support such a claim. *See Holmes v. Algarin*, No. CIV.A. 12-6245, 2013 WL 4763863, at *5 (E.D. Pa. Sept. 4, 2013). Rather, Lomax's allegations and the evidence in the record concern "the isolated treatment of [Lomax] in particular." *See Beard v. Corizon Health, Inc.*, No. CV 14-4129, 2017 WL 368037, at *4 (E.D. Pa. Jan. 24, 2017).[8] Accordingly, because Lomax has failed to raise a genuine issue of material fact as to whether Corizon has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs, Corizon is entitled to summary judgment on Lomax's claims.

**B.  Dr. Davis**

Corizon contends that the undisputed facts show that Dr. Davis should also be dismissed from this case.[9] Specifically, Corizon points to Lomax's testimony that he is suing Dr. Davis because he is the head of Corizon and "should have better people to provide care for the inmates at CFCF," Lomax Dep. 16:20-17:1, and Lomax's acknowledgment that he did not receive any medical treatment from Dr. Davis or see him for any medical appointments, Lomax Dep. 17:2-7.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are two theories of supervisory

---

[8]  As noted above, Lomax's Complaint alleges that "[o]ther inmates . . . have developed similar body pains, aches, injuries, etc.," but the Complaint does not allege that other inmates received inadequate treatment from Corizon, nor is there evidence in the record to show this.

[9]  Dr. Davis has not entered an appearance in this case and is a nonmovant with respect to Corizon's motion. Under Federal Rule of Civil Procedure 56(f), the court may grant summary judgment for a nonmovant "[a]fter giving notice and a reasonable time to respond." Here, Lomax had sufficient notice that his claims against Dr. Davis could be considered in connection with Corizon's motion, as Corizon stated in its brief that it sought dismissal of Lomax's claims against Dr. Davis. In addition, Lomax addressed the merits of his claims against Dr. Davis in his own motion for summary judgment.

liability: (1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; and (2) the defendant, in his role as policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice or custom which directly caused the plaintiff's constitutional harm. *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

With respect to the first theory of supervisory liability, it is undisputed that Dr. Davis was not personally involved in Lomax's treatment. Nor, with respect to the second theory, has Lomax identified any policy, practice, or custom established and maintained by Dr. Davis. Accordingly, summary judgment is granted to Dr. Davis.

## V. Lomax's claims against the remaining defendants are dismissed without prejudice.[10]

As noted above, the Court earlier dismissed Lomax's claims against CFCF and the Philadelphia Prison System because these entities are not "persons" under § 1983. The remaining defendants are the City of Philadelphia, Mayor Nutter, and the CFCF Mental Health Department.

---

[10] It appears that summonses were never issued in this case, and these remaining Defendants have not been served, nor have they entered an appearance in this case. The Court will screen Lomax's claims against these Defendants pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), which authorizes a district court to dismiss an action brought by a prisoner under 28 U.S.C. § 1915 if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. "The legal standard for dismissing a complaint for failure to state a claim under § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Credico v. Guthrie*, 570 F. App'x 169, 170 (3d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

Because Lomax has failed to state a claim against these Defendants, his claims against them will be dismissed, but Lomax will be granted leave to file an amended complaint.

**A.       Lomax's claims against the City of Philadelphia are dismissed without prejudice.**

"[S]ection 1983 liability attaches to a municipality only when 'execution of a government's policy or custom . . . inflicts the injury.'" *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480. Lomax has not alleged any such custom or policy. Rather, Lomax's allegations mainly focus on his own injuries, with the exception of his allegation that "[o]ther inmates . . . have developed similar body pains, aches, injuries, etc." But this allegation, by itself, does not identify any particular custom or policy enacted by the City. *See McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). The Court is unable to determine whether Lomax might be able to allege additional facts to state a claim against the City, and he is therefore granted leave to amend his claims against the City of Philadelphia.

**B.       Lomax's claims against Mayor Nutter are dismissed without prejudice.**

As previously discussed, there are two theories of supervisory liability: (1) the defendant-supervisor participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations; and (2) the defendant, in his role as

policymaker, acted with deliberate indifference in establishing and maintaining a policy, practice or custom which directly caused the plaintiff's constitutional harm. *A.M.*, 372 F.3d at 586. Here, Lomax has failed to allege any personal involvement on the part of Nutter under the first theory of supervisory liability.

With respect to the second theory of supervisory liability, when relying on policy or practice to establish supervisor liability, the plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). Additionally, a "plaintiff must specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest to the Court a relationship between the 'identified deficiency' of a policy or custom and the injury suffered." *Cain v. Nutter*, No. CV 15-5524, 2016 WL 7031891, at *2 (E.D. Pa. Dec. 1, 2016). "[P]roof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action." *Bielevicz*, 915 F.2d at 850. Lomax's conclusory allegations about the City's policy and procedures do not suffice to make the requisite showing. Lomax is granted leave to amend his claims against Mayor Nutter.

### C.     CFCF Mental Health Department

Lomax's Complaint does not include any allegations specifically concerning the CFCF Mental Health Department.[11] Consequently, his claims against the CFCF Mental Health

---

[11]     At his deposition, Lomax testified that he is suing the CFCF Mental Health Department because he suffered mental anguish as a result of not having his physical complaints addressed. Lomax Dep. 17:13-20. But Lomax acknowledged that he was not seen by any members of the

Department are dismissed. The Court is unable to determine whether an amendment would be futile, so the dismissal is without prejudice, and Lomax is granted leave to amend his claims against this entity.

## VI. Conclusion

For the reasons set forth above, summary judgment is granted in favor of Corizon and Dr. Davis. Lomax's claims against the City of Philadelphia, Mayor Nutter, and the CFCF Mental Health Department are dismissed without prejudice, and Lomax is given an opportunity to amend his complaint as to these three Defendants only. Lomax is advised that the "amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). It must be a new pleading which stands by itself without reference to the original complaint. *Id.* The amended complaint "may not contain conclusory allegations[; r]ather, it must establish the existence of specific actions by the defendants which have resulted in constitutional deprivations." *Id.* (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)). "The amended complaint must also be 'simple, concise, and direct' as required by the Federal Rules of Civil Procedure." *Id.* (citing Fed. R. Civ. P. 8(e)(1)). A separate order follows.

                                                  BY THE COURT:

                                                  */s/ Joseph F. Leeson, Jr.*
                                                  JOSEPH F. LEESON, JR.
                                                  United States District Judge

---

mental health staff while he was at CFCF, Lomax Dep. 17:21-24, and so the basis of Lomax's claims against this entity is unclear.